IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DONALD S. GREER,<br><br>          Plaintiff,<br><br>     v.<br><br>HAWAII PERMANENTE MEDICAL<br>GROUP, INC.; HAWAII PACIFIC<br>HEALTH; THE QUEEN'S HEALTH<br>SYSTEM; HAWAII HEALTH<br>SYSTEMS CORPORATION,<br><br>          Defendants. | CIV. NO. 24-00299 JMS-RT<br><br>ORDER GRANTING<br>DEFENDANTS' MOTIONS TO<br>DISMISS, ECF NOS. 18, 22, 25, AND<br>30 |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS,
ECF NOS. 18, 22, 25, AND 30**

**I.  INTRODUCTION**

On July 16, 2024, pro se Plaintiff Donald S. Greer ("Plaintiff" or

"Greer") filed a Complaint against Defendants Hawaii Health System Corporation

("HHSC"), Hawaii Permanente Medical Group, Inc. ("HPMG"), The Queen's

Health System ("QHS"), and Hawaii Pacific Health ("HPH") alleging:  Count I—

violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182

("ADA") (against Defendants HPMG, QHS, and HPH only); Count II—violations

of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) ("Rehabilitation Act");

Count III—violations of Section 1557 of the Patient Protection and Affordable Care

Act, 42 U.S.C. § 18116 ("ACA"); and Count IV—violations of Hawaii Law

Against Discrimination in Public Accommodations, Hawaii Revised Statutes

("HRS") § 489-1, et seq. for purported concealment, denial, and withholding of

medical treatment.  Before the court are Defendants' Motions to Dismiss for failure

to state a claim.  ECF Nos. 18, 22, 25, & 30 ("Motion" or "Motions").  For the

following reasons, Defendants' Motions are GRANTED.

## II. <u>BACKGROUND</u>

### A.    **Factual Background**

On July 16, 2024, Plaintiff filed his 557-paragraph and 113-page

Complaint.  Given this length, the court does not set forth all its allegations but

instead gleans the following:

Seventy-one-year-old Plaintiff alleges that for 58 years he has received

discriminatory treatment by numerous physicians.[1]  *See* ECF No. 1 at PageID.7

(¶ 9); *see also* PageID.73 (¶ 401.m.).  In 1957, when he was four, Plaintiff

contracted polio, resulting in the loss of approximately one-third to one-half of his

motor nerves and partial paralysis.  *See id.* at PageID.6 (¶ 5); *id.* at PageID.12

(¶ 32); *id.* at PageID.13 (¶ 34); *id.* at PageID.14 (¶ 39).  In 1966, when he was 13,

*id.* at PageID.14 (¶¶ 42, 44), Plaintiff developed an atrophic left testicle and

---

[1]  Plaintiff characterizes them as "Defendant Physicians" although none of them is named individually in this action.

testicular pain, which "Kaiser Permanente Physicians in California [('California KP')] falsely diagnosed" as a "[t]esticular [d]isability" "caused by nerve damage from Polio and untreatable with the exception of removal." *Id.* at PageID.7 (¶¶ 7, 8), PageID.15 (¶ 46).  California KP allegedly conducted no medical tests to rule out a varicocele.[2]  *Id.* at PageID.16 (¶ 53).  Instead, California KP allegedly exploited Greer's polio disability to "conceal and withhold Testicular Disability medical treatment," *id.* (¶ 57), and "brainwashed" Plaintiff into believing that the cause of his testicular condition was polio.  *Id.* at PageID.17 (¶ 58).  Plaintiff's California KP medical records have been discarded due to age.  *Id.* (¶ 59).

In 2002, Plaintiff moved to Kauai County, Hawaii.  *Id.* at PageID.10 (¶ 19), PageID.18 (¶ 66).  He sought treatment with numerous physicians of HHSC, HPH, and QHS, many of whom he informed of his history of "Polio Disability" and "Testicular Disability," but he alleges that they omitted this information from his medical records prior to November 27, 2018—when he was diagnosed with having a varicocele—or otherwise falsified them.  *See id.* at PageID.32 (¶ 150); *see also id.* at PageID.75 (¶ 410); PageID.83 (¶ 453.h.).  Assuming the truth of the Complaint's allegations at the motion-to-dismiss stage, the following timeline extracted from the

---

[2]  A varicocele is a common medical condition characterized by abnormal dilation and enlargement of the scrotal venous pampiniform plexus, which drains blood from each testicle. The result is often a complex network of swollen vessels.  *See* Varicocele, National Center for Biotechnology Information, https://www.ncbi.nlm.nih.gov/books/NBK448113/ [https://perma.cc/7XEK-ZG3B].

Complaint shows that Plaintiff consulted with numerous physicians to address his

conditions, which includes treatment for an adverse reaction to tamsulosin, a drug

allegedly prescribed to "*prevent* testicular recovery":[3]

| | | |
|---|---|---|
| Dr. O'Neill | 2009–2013 | Primary care physician (Defendant HHSC), *id*. at PageID.20 (¶ 80) |
| Dr. Scott | 2009 | Performs colonoscopy (Defendant HHSC), PageID.22 (¶ 99) |
| Dr. Rao | 2012 | Neurologist (Defendant HPH), *id*. at PageID.25 (¶ 114) |
| Dr. Dupree | 2013–2022 | Primary care physician (Defendant HHSC), *id*. at PageID.20 (¶ 84) |
| Dr. Miyashiro | 2013 | Surgeon (Defendant HPH), *id*. at PageID.25 (¶ 114) |
| Dr. Hopkins | 2013–2018 | Physical medicine (Defendant HPH), *id*. |
| Dr. Fitzgerald | 2018–2019 | Urologist (Defendant HPH), *id*. at PageID.22 (¶ 93); diagnoses Plaintiff's varicocele and informs him that his testicular condition is not due to polio, *id*. at PageID.7 (¶ 8); *id*. at PageID.22 (¶¶ 94–96) |

---

[3] *See* ECF No. 1 at PageID.33 ("HPH Defendant Prescribing a Drug, Tamsulosin, to Prevent Testicular Recovery."). Tamsulosin is indicated for the treatment of the signs and symptoms of benign prostatic hyperplasia ("BPH"). *See* Tamsulosin hydrochloride capsule, Indications & Usage, National Library of Medicine, https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=ed9988bc-0759-4c36-bee1-11b68dc1c84c [https://perma.cc/BN5C-7HLH]. BPH, in turn, refers to the nonmalignant growth or hyperplasia of prostate tissue and is a common cause of lower urinary tract symptoms in older men. *See* Benign Prostatic Hyperplasia, National Library of Medicine, https://www.ncbi.nlm.nih.gov/books/NBK558920/ [https://perma.cc/VW9G-KE69].

|            | 2019       | Schedules varicocele surgery, *id*. at PageID.7 (¶ 9); prescribes tamsulosin, *id*. at PageID.33 (¶ 157), Plaintiff has adverse reaction, *id*. at PageID.53 (¶ 275)[4] |
| Dr. Morris |            |            |
| Dr. Phillips | 2019     | Performs colonoscopy (Defendant HPH), *id*. at PageID.25 (¶ 111) |
| Dr. Jackson | 2019      | Performs sleep study (Defendant HPH), *id*. at PageID.43 (¶ 207) |
| Dr. Leckova | 2016, 2019 | Hematologist and oncologist (Defendant HPH), *id*. at PageID.25 (¶ 114) |
| Dr. So | 2019, 2021 | Cardiologist (Defendant HPH), *id*. at PageID.46–47 (¶¶ 232, 233) |
| Dr. Chin | 2020 | Neurologist (Defendant QHS), *id*. at PageID.23 (¶ 105) |
| Dr. Sato | 2021 | Pulmonologist (Defendant QHS), *id*. at PageID.24 (¶ 108) |
| Dr. Lui | 2022 | Primary care physician (Defendant HHSC), *id*. at PageID.43 (¶ 209) |
| Dr. Kai | 2022, 2023 | Cardiologist (Defendant HPH), *id*. at PageID.25 (¶ 114) |

---

[4] Plaintiff alleges a testicular ultrasound performed on January 11, 2019, prior to taking tamsulosin, showed a normal right testicle and an atrophic left testicle, a left varicocele and a possible right varicocele. ECF No. 1 at PageID.38 (¶¶ 183, 184). A second testicular ultrasound was performed on May 2, 2019, after Plaintiff began taking tamsulosin. *Id*. (¶ 185). This ultrasound showed that Plaintiff's right testicle shrunk by 23%, *no* atrophic left testicle, *no* left varicocele and no right varicocele. *Id*. (¶ 186). Plaintiff alleges that on May 16, 2019, two weeks after the second ultrasound, Dr. Fitzgerald "medically abandoned" him. *Id*. at PageID.39 (¶ 191). Plaintiff emailed Dr. Fitzgerald for help and an explanation but received no response and no further treatment from Dr. Fitzgerald. *Id*. (¶ 192). Thus, it appears that Plaintiff did not undergo varicocele surgery and no other doctor ordered it. *See, e.g.*, *id*. at PageID.58 (¶ 303).

| | | |
|---|---|---|
| Dr. Horton | 2022, 2023 | Primary care physician (Defendant HHSC), *id.* at PageID.56, 58 (¶¶ 295, 307) |
| Dr. Sakoda | 2023 | Neurologist (Defendant HPH), *id.* at PageID.25 (¶ 114) |
| Dr. Ortolano | 2023 | Urologist (Defendant HHSC), *id.* at PageID.57 (¶¶ 297, 298) |
| Dr. Tran<br>Dr. Orlang<br>Dr. Greig | 2023[5] | (Defendant HPH), *id.* at PageID.58 (¶ 306) |
| Dr. Kessler | 2023 | Osteopath (Defendant HHSC), *id.* at PageID.50 (¶ 257) |
| Dr. Sakoda | 2023 | Neurologist (Defendant HPH), *id.* at PageID.51 (¶ 264) |
| Dr. Miller | 2024 | Urologist (Defendant HPH), id. at PageID.60 (¶ 320) |

Plaintiff alleges that he has requested varicocele corrective surgery

from Defendants HPH and HHSC for both his left and right testicles to address

testicular atrophy, testosterone production, and testicular pain.  *Id.* at PageID.67

(¶¶ 363–366).  He desires a normal sex life, which has purportedly been denied him

for many years, and he believes that the benefit of varicocele surgery, to restore a

---

[5] Plaintiff does not allege in what year Drs. Tran, Orlang, and Greig treated him, nor their specialties, but he alleged that they, along with Dr. Horton, denied his request for varicocele corrective surgery and further medical tests.  *See* ECF No. 1 at PageID.58 (¶ 306).  Dr. Horton appeared to have referenced them all in a December 2023 "medical correspondence" that "*ALL of them know of NO treatment nor diagnostic test available or known to them to treat your vascular testicular problem.*"  *Id.* (¶ 307).  It thus appears that Plaintiff sought treatment from Drs. Tran, Orlang, and Greig sometime around 2023.

normal sex life, outweighs the risk of the procedure. *Id*. at PageID.67–68 (¶¶ 367, 368).

Plaintiff claims that Defendants concealed and withheld medical treatment for his testicular disability and that such actions constituted intentional discrimination and deliberate indifference "solely by reason of disability," *id*. at PageID.30 (¶ 142); *see also id*. at PageID.55–56 (¶ 291), in addition to elder abuse and a hate crime in Hawaii. *See, e.g.*, *id*. at PageID.59 (¶ 310); *id*. at PageID.65 (¶ 352); *id*. at PageID.69 (¶ 375). Plaintiff also claims that he continues to suffer the adverse effects of tamsulosin because of Defendants withholding medical treatment for his testicular disability; these effects include traumatic brain injury (Alzheimer's, dementia, memory loss, and insomnia), heart failure, vascular damage, eye damage, further testicular damage, digestive damage, lymphedema, and acute post-polio nerve degeneration. *See, e.g.*, *id*. at PageID.56 (¶ 293); *id*. at PageID.66 (¶ 357).

## B.    Procedural Background[6]

On July 16, 2024, Plaintiff filed the Complaint. ECF No. 1. Defendants' respective Motions followed: HHSC's on September 13, 2024 (ECF

---

[6] Greer has filed previous suits involving the same factual underpinnings of the instant case. In 2021, Greer filed an ADA discrimination complaint in state court. *See Greer v. County of Kaua'i*, 5CCV-21-0000059 ("state court action"). The state court action was dismissed on October 20, 2021. *See id*., Dkt. 31. In 2022, Greer filed a complaint in federal court against numerous state entities and individuals for disability discrimination under the ADA and disability

(continued . . . )

No. 18); HPMG and QHS's on September 16, 2024 (ECF Nos. 22 & 25); and HPH's on September 17, 2024 (ECF No. 30).  On October 28, 2024, Plaintiff filed responses to Defendant HPMG (ECF No. 38) and Defendant QHS (ECF No. 39) and on October 28, 2024, to Defendant HHSC (ECF No. 36) and Defendant HPH (ECF No. 37).  Defendants filed replies on November 4, 2024:  HPMG (ECF No. 41); HHSC (ECF No. 42); QHS (ECF No. 43); and HPH (ECF No. 44).  The court decides the Motions without a hearing under Local Rule 7.1(c).

### III.  <u>STANDARDS OF REVIEW</u>

#### A.     **Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica*

---

discrimination under the Rehabilitation Act.  *See Greer v. State of Hawaii, et al*., Civ. No. 22-00286 LEK-WRP.  Judge Leslie E. Kobayashi permitted Greer to amend his complaint but ultimately dismissed with prejudice the third amended complaint based on the preclusive effect of the state court action and consequent failure to state a claim upon which relief can be granted. *See id*., ECF No. 75.  "[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment . . . ."  *Skilstaf, Inc. v. CVS Caremark Corp*., 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (citation and internal quotation marks omitted); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  Courts do not, however, take judicial notice of the truth of facts asserted in those records, which may be subject to reasonable dispute.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

*Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  Rule 12 is read in conjunction with Rule 8(a)(2), which "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *id.*).  To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must offer "more than labels and conclusions," and instead contain "enough factual matter" indicating "plausible" grounds for relief, not merely "conceivable" ones.  *Banks v. N. Tr. Corp*., 929 F.3d 1046, 1055–56 (9th Cir. 2019) (citing *Twombly*, 550 U.S. at 555–56).  And in a 12(b)(6) analysis, the court accepts as true the material facts alleged in the complaint and construes them in the light most favorable to the nonmovant.  *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (citation omitted).

## B.    Statute of Limitations

A statute-of-limitations defense, if "apparent from the face of the

complaint," may properly be raised in a motion to dismiss.  *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir.1980)).

## C.    Pro Se Plaintiff

Plaintiff is appearing pro se; consequently, the court liberally construes the Complaint and resolves all doubts in Plaintiff's favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam).  The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."  *Lucas v. Dep't of Corr*., 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013).  When a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## IV.  <u>DISCUSSION</u>

### A.     **Greer Has Not Stated a Claim Against HPMG**

Rule 8 requires that Greer provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. Rule 8.  With respect to HPMG, none of Greer's claims meets the requirements of Rule 8.

HPMG provides healthcare services in the state of Hawaii.  ECF No. 1 at PageID.10 (¶ 21) (alleging that HPMG is a "not-for-profit health care system providing healthcare services in the State of Hawaii"); ECF No. 22-1 at PageID.306 (admitting the allegation in ¶ 21 of the Complaint).  But Greer's allegations implicate "Kaiser Permanente Physicians, in San Rafael, California, [who] falsely diagnosed [Plaintiff's] Testicular Disability."  ECF No. 1 at PageID.15 (¶ 46).  Specifically, these allegations refer to Kaiser Permanente Physicians' diagnosis of Greer's testicular disability in 1966 as resulting from polio, *id.* at PageID.7 (¶ 7), PageID.15 (¶ 46), which Greer alleges "continued from Physician to Physician, for 52 years (from 1966 to 2018)."  *Id.* at PageID.7 (¶ 8).

Because HPMG provides services only in Hawaii, the Complaint fails to allege that HPMG caused or contributed to Greer's injuries.  Greer alleges his injuries were caused by Kaiser Permanente physicians in California, not Hawaii, and Greer provides no legal theory under which HPMG could be found liable for the alleged negligence of the California physicians.  All claims against HPMG are

11

therefore DISMISSED with prejudice.  Given that Kaiser Permanente in California and HPMG are different entities and Greer's allegations do not appear to concern HPMG, amendment would be futile.[7]

**B.    Greer Fails to State a Claim Under Title III of the ADA, § 504 of the Rehabilitation Act, and § 1557 of the ACA**

All three of the federal statues at issue—Title III of the ADA, § 504 of the Rehabilitation Act, and § 1557 of the ACA—prohibit discrimination because of a disability, not subpar medical care for a disability.  Here, none of the statutes applies because the Complaint simply alleges claims sounding in medical malpractice.  Greer's attempt to recast his medical care as being based on disability discrimination fails.  Thus, all three federal claims are dismissed with prejudice.

*1.    Legal Principles*

To state a claim under all three of these federal statutes, a plaintiff must allege discrimination on the basis of, or by reason of, a disability.  *See* 42 U.S.C. § 12182(a) (ADA);[8] 29 U.S.C. § 794 (Section 504 of the Rehabilitation

---

[7]  And given the analysis of the substantive claims set forth below, it would likewise be futile for Plaintiff to file an amended complaint in this court naming Kaiser Permanente in California as a Defendant.

[8]  Section 12182(a) states: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

Act);[9] and *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210 (9th Cir. 2020)

(holding that to state a claim for [an ACA] Section 1557 violation, a plaintiff must

state facts adequate to state a claim under Section 504 of the Rehabilitation Act).[10]

That is, all three statutes prohibit discrimination *because of* disability, not because

of inadequate medical care *for* a disability.  Here, Greer's federal claims do not—

and under the facts of the Complaint cannot—allege that he was discriminated

against because of his disability.  Instead, at its core the Complaint alleges medical

malpractice and thus fails to state a claim.

       Courts are in agreement that medical treatment decisions cannot form

the basis of a claim under the ADA or Section 504.  *See Simmons v. Navajo County*,

609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because

of disability, not inadequate treatment for disability."), *overruled on other grounds

by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc);

*McDaniel v. Syed*, 115 F.4th 805, 825 (7th Cir. 2024) ("When prisoners are

unhappy with the medical care they have received, legal redress may be available

through medical malpractice suits or Eighth Amendment suits, not under the ADA

---

    [9]  Section 504 of the Rehabilitation Act states, in relevant part: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

    [10]  Because the requirements to state a claim under § 504 of the Rehabilitation Act and § 1557 of the ACA are the same, the discussion of § 504 claim in this Order applies equally to the ACA claim.

13

or the Rehabilitation Act.");[11] *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam) (stating that a lawsuit under the Rehabilitation Act or the ADA "cannot be based on medical treatment decisions"); *Fitzgerald v. Corr. Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005) (finding no claim under the ADA or Section 504 where the alleged disability was the reason the plaintiff was seeking medical treatment); *Tardif v. City of New York*, 991 F.3d 394, 405 (2d Cir. 2021) (distinguishing between a claim that an individual was denied medical services *because of* a disability (which could be covered under the ADA) and a claim that an individual received inadequate medical treatment *for* a disability (which is not cognizable under the ADA)); *Grant v. Alperovich*, 703 F. App'x 556, 557 (9th Cir. 2017) ("The district court correctly concluded that Grant's assertion of discrimination in medical treatment decisions amounted to a claim of medical malpractice, rather than a claim of discrimination governed by the ADA."); *Grant v. Alperovich*, 993 F. Supp. 2d 1356, 1364–65 (W.D. Wash. 2014) ("Several courts have distinguished between ADA claims based on inadequate medical care and claims based on discriminatory medical care.").

---

[11] *McDaniel* explained an exception to this rule—requests for accommodations, such as issues relating to mobility, "are not entirely off-limits from scrutiny under the ADA and Rehabilitation Act." *Id.*; *see also Brown v. Meisner*, 81 F.4th 706, 709 (7th Cir. 2023). Thus, "federal courts have routinely held that ADA claims based on inadequate medical care fail, but claims based on discriminatory medical care do not. . . . Discrimination under the ADA includes 'failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary accommodations to individuals with disabilities.'" *S.L. by & through D.L. v. City Hosp., Inc.*, 377 F. Supp. 3d 626, 632 (N.D. W.Va. 2019) (citations omitted).

In an unpublished memorandum, the Ninth Circuit explained that if a plaintiff's "handicapping condition" is "inextricably linked" with the condition for which medical treatment is sought, the plaintiff is not "otherwise qualified" for the treatment and cannot make a prima facie case under § 504.  *O'Guinn v. Nevada Dep't of Corr.,* 468 F. App'x 651, 653 (9th Cir. 2012).  Thus, if an individual only needs treatment because of a disability, that person cannot be "discriminatorily denied . . . treatment because of his . . . disability."  *Id.*

The Tenth Circuit has explained that Title II of the ADA and § 504 of the Rehabilitation Act are unsuited to claims regarding medical treatment decisions, and were not intended to provide a remedy for medical negligence:

> [T]he term *otherwise qualified* [as used in the Rehabilitation Act] cannot ordinarily be applied "in the comparatively fluid context of medical treatment decisions without distorting its plain meaning." . . . [T]he Second Circuit has stated: "Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'"

*Fitzgerald*, 403 F.3d at 1144 (first quoting *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992), then quoting *United States v. Univ. Hosp.*, 729 F.2d 144, 157 (2d Cir. 1984) (internal citations omitted)).  This is common sense: If the only reason that an individual is seeking medical treatment is to alleviate a condition related to his disability, then it will be difficult—if not impossible—to establish discriminatory treatment based on that same disability.

15

### 2.    *Analysis*

Greer alleges both a "Polio disability" and a "Testicular disability." ECF No. 1 at PageID.12 (¶ 31).  He states, in a conclusory fashion, that Defendants subjected him to discrimination "solely by reason of disability"—but he does not explain how he was denied medical treatment or subjected to inferior medical treatment because of either one of these disabilities.  *See, e.g., id*. at PageID.105 (¶ 558).

To the extent Greer's federal claims concern medical treatment to address his testicular disability, they fail because the treatment was intended to address the testicular disability itself.  *See* ECF No. 1 at PageID.67 (¶¶ 363–366) ("Dr. Greer desires and has requested varicocele corrective surgery for: Testicular Atrophy Reversal[,] Testosterone Production Improvement[,] Testicular Pain."); *id.* (¶ 367) ("Dr Greer desires a normal sexual life, a Disability Right that has been denied Dr Greer for fifty-eight years . . . .").  Greer's complaint is, in essence, that his treatment for his testicular disability was inadequate—which is not actionable discrimination under the ADA.  *Simmons*, 609 F.3d at 1022 ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); *cf. Fitzgerald*, 403 F.3d at 1144 (finding no claim under the ADA or Section 504 where the alleged disability was the reason the plaintiff was seeking medical treatment).

With respect to Greer's polio disability, he repeats one conclusory allegation verbatim throughout his Complaint:  Defendants "exploit[ed] [his] Polio Disability to conceal and withhold medical treatment for [his] Testicular Disability."[12]  But he does not allege that he was denied treatment for his testicular disability *because* he had a polio disability, nor any facts that would support such an allegation.  At best, he alleges that doctors misdiagnosed his testicular condition as an after-effect of polio.  Again, deficient medical care *for* a disability is not actionable under the ADA—the deficiency must be *because of* the disability.  *Grant*, 703 F. App'x at 557 (Plaintiff's allegations were correctly dismissed when they "amounted to a claim of medical malpractice, rather than a claim of discrimination governed by the ADA.").

As support for his argument that he was subjected to discriminatory treatment on account of his disability, Greer alleges that his history of polio, testicular disability, and atrophic left testicle are not mentioned or are omitted from the records of HPH, QHS, and HHSC prior to the November 27, 2018 diagnosis by HPH Dr. Fitzgerald.  *See, e.g.*, ECF No. 36 at PageID.627.   He continues:

> It could be reasonably concluded that omitting Dr Greer's Polio Disability, Testicular Disability, and his Atrophic Left Testicle in medical records is an act performed both

---

[12]  *See* ECF No. 1 at PageID.27 (¶ 120), PageID.31 (¶ 144), PageID.32 (¶ 154), PageID.33 (¶ 156), PageID.36 (¶ 177), PageID.41 (¶ 201), PageID.55–56 (¶ 291), PageID.59 (¶ 313), PageID.65 (¶ 355), PageID.69 (¶ 378), PageID.74 (¶ 406), PageID.75–76 (¶ 412), PageID.86 (¶ 467), PageID.92 (¶ 494), PageID.99 (¶ 528).

'solely and 'intentionally' by reason of disability because of the length of time this act occurred was 15 years (from 2003 to 1018[sic]).  Multiple Physicians from multiple health providers falsifying Dr Greer's medical record demonstrates a well coordinated act performed 'solely and intentionally' by reason of disability.

*Id*.

But these allegations are both conclusory—reframing medical malpractice as medical treatment "by reason of disability" does not make it so—and they lack any plausibility.  In fact, they teeter on being fanciful.  Greer claims that multiple physicians falsified medical records from 2003 through 2018, and from this "[i]t may be concluded that Defendants were involved in covering-up disability discrimination in order to protect prior Physicians who were Concealing and Withholding disability medical treatment from Dr Greer."  *Id*. at PageID.629.  But the court finds these allegations implausible—both that the medical records were falsified, and that Defendants were involved in covering up physicians' discriminatory behavior.  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  A complaint must "nudge" the plaintiff's claims "across the line from conceivable to plausible."  *Nielsen v. Thornell*, 101 F.4th 1164, 1169 (9th Cir. 2024) (quoting *Twombly*, 550 U.S. at 570).  Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679 (citation omitted).

Drawing on its common sense, the court first finds it implausible that there was a conspiracy among medical professionals to falsify Greer's medical records to conceal a varicocele diagnosis from him.  Greer claims that seven different physicians at two different hospitals that he saw in the 2003–2018 period, prior to the November 27, 2018 diagnosis, all knew he had one or more varicoceles—and all concealed this from him.[13]  Each of these seven doctors allegedly examined him and found one or more varicoceles—but each doctor independently and intentionally omitted the varicocele diagnosis from his or her medical records, collectively deceiving Greer and telling him that his disability was due to childhood polio.  *Id.* at PageID.31 (¶ 148).  This allegation lacks plausibility—there is simply no reason that multiple physicians, independent of one another, would engage in such activity, and there are no facts pointing to a conspiracy.

More likely, none of these seven doctors arrived at the varicocele diagnosis at all.  Greer's only evidence of the doctors' knowledge of his varicoceles

---

[13]  The doctors in question are Dr. O'Neill (Defendant HHSC), Greer's primary care physician from 2009–2013, ECF No. 1 at PageID.20 (¶ 80); Dr. Scott (Defendant HHSC), who performed a colonoscopy on Plaintiff in 2009, *id.* at PageID.22 (¶ 99); Dr. Rao (Defendant HPH), Greer's neurologist in 2012, *id.* at PageID.25 (¶ 114); Dr. Dupree (Defendant HHSC), Greer's primary care physician from 2013–2022, *id.* at PageID.20 (¶ 84); Dr. Miyashiro (Defendant HPH), Greer's surgeon in 2013, *id.* at PageID.25 (¶ 114); Dr. Hopkins (Defendant HPH), Greer's physical medicine doctor for 2013–2018, *id.* at PageID.25 (¶ 114); and Dr. Leckova (Defendant HPH), a hematologist and oncologist who treated Greer in 2016, *id.* at PageID.25 (¶ 114).

is that they "knew or should have known of varicoceles," that they "knew of [his] Disabilities" because he informed them during medical visits, and that they "visually observed [his] Testicular Disability when performing physical medical examinations." *Id.* at PageID.28 (¶ 131); *see generally id.* at PageID.20–27 (¶¶ 80–122).  But, Greer's vague reference to "physical medical examinations" notwithstanding, it seems unlikely (and implausible) that the specialists Greer saw during this period (like Dr. Scott, who performed a colonoscopy on Plaintiff in 2009, Dr. Rao, a neurologist, Dr. Miyashiro, a surgeon, and Dr. Leckova, a hematologist and oncologist) all physically examined his testicles to the extent required to diagnose a varicocele.  Even assuming all seven doctors did conduct such an examination, there is no evidence any of them diagnosed a varicocele. Even if the court assumes that they all did make such a diagnosis, there is no reason that they would all conspired to conceal it from Greer.

Second, again drawing on common sense, the court finds that Greer's allegation that his medical records were falsified because of discrimination based on Greer's disability is implausible.  Even if it were true that this series of doctors in a series of hospitals over more than a decade conspired to falsify medical records to cover-up some prior malpractice—there would still be no reason for drawing a fair inference of discrimination *because* of a disability as opposed to simply medical malpractice.  There are also no particularized facts to conclude that Defendants

HHSC, HPMG, QHS, and HPH conspired to cover up for the seven doctors that Greer identified.

In short, dressing up medical negligence claims in the guise of discrimination claims does not make those claims viable. Greer has not met the pleading standard for an ADA,[14] Rehabilitation Act, or ACA Section 1557 claim because all of these require him to allege that he was discriminated against because of his disability. Therefore, Greer's ADA and Rehabilitation Act claims (and, by

---

[14] As an alternate basis for dismissal of Greer's ADA Title III claim, Greer's injury cannot be remedied by injunctive relief, which is the only relief available under that statute. *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)(1) (providing that remedies under Title III are the same as those outlined in 42 U.S.C. § 2000a–3(a), which do not permit recovery of monetary damages)).

Greer requests an injunction "forbidding Defendants from implementing policies, procedures and practices that deny proper medical care . . . for disabled persons equal to the medical care given to non-disabled persons." ECF No. 1 at PageID.110 (¶ 2(a) and (b)). But this injunction would not redress any injury of Greer's. Greer's alleged misdiagnosis of his testicular disability was already remedied in November 2018, when Greer learned the varicocele diagnosis. *See Whitaker v. Peet's Coffee, Inc.*, 2022 WL 6698328, at *1 (N.D. Cal. Oct. 11, 2022) ("To have Article III standing for injunctive relief—the only form of relief available under the ADA—a plaintiff cannot simply point to 'past exposure to illegal conduct.' The plaintiff must show 'continuing, present adverse effects' stemming from that conduct.") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Greer alleges other injuries such as "medical abandonment" by Dr. Fitzgerald and an adverse tamsulosin reaction, ECF No. 1 at PageID.40 (¶ 196), but it is not clear how these would be redressed by the injunction he seeks, which would apply prospectively. And although Greer purports to seek an injunction on behalf of other "disabled persons," he would still need a redressable injury to have standing to sue. *See Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1083 (D. Haw. 2000) ("A disabled individual cannot vindicate the rights of disabled persons generally.").

extension, his ACA § 1557 claim) are DISMISSED.[15]  Because any amendment

would be futile, the claims are dismissed with prejudice.

## C.    Greer's Federal Claims Are Time-Barred

As an independent ground for dismissal, Greer's federal claims are

time-barred.

### 1.    *Legal Principles*

#### a.    *Title III of the ADA*

"[T]he applicable statute of limitations for an ADA Title III claim has

not been definitively established."  *Gastelum v. Burlington Stores, Inc.*, 2024 WL

389229, at *3 n.4 (S.D. Cal. Feb. 1, 2024) (citing *Simmons v. Doane*, 2021 WL

411365, at *2 (N.D. Cal. Feb 5, 2021)); *see also Tapia v. Moughamian*, 2020 WL

13610393, at *6 (N.D. Cal. June 1, 2020) ("The Ninth Circuit has not decided the

applicable statute of limitations for Title III claims.").  When a federal statute lacks

a statute of limitations, courts may apply the most analogous state statute of

---

[15]  Although HPMG did not argue that Greer's federal claims should be dismissed on this basis (i.e., that Greer failed to allege he was discriminated against *because of* his disability), HPMG stands on equal footing with other Defendants and therefore the court dismisses these claims as to all four Defendants.  In other words, all claims are dismissed against HPMG both under Rule 8 as explained in Section A, and on the alternate grounds articulated in this Section B.  *See, e.g.*, *Silverton v. Dep't of the Treasury of U.S. of Am.*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A [d]istrict [c]ourt may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants . . . ."); *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742–43 (9th Cir. 2008) ("As a legal matter, we have upheld dismissal with prejudice in favor of a party which had not appeared, on the basis of facts presented by other defendants which had appeared.") (citation omitted).

limitations.  *See Donoghue v. County of Orange*, 848 F.2d 926, 930 (9th Cir. 1987);

*Pickern v. Holiday Quality Foods Inc*., 293 F.3d 1133, 1137 n. 2 (9th Cir. 2002)

(stating that courts apply the statute of limitations for the most analogous state law

for claims brought under the ADA).[16]

      This court previously applied HRS § 657-7—Hawaii's personal injury

statute—to actions arising under Title II of the ADA.[17]  *See Imamoto v. Soc. Sec.

Admin.*, 2008 WL 4657811, at *4 (D. Haw. Oct 21, 2008); *accord Char v. Tresch*,

2023 WL 7090397, at *7 (D. Haw. Oct. 26, 2023) (citing *Imamoto*, 2008 WL

4657811, at *4).  As with Title II, Hawaii's general personal injury statute appears

most analogous to a claim brought under Title III.[18]  Other courts are in accord.  *See*

_____

[16]  In 1990, Congress enacted 28 U.S.C. § 1658, which unless otherwise provided, establishes a four-year statute of limitation for actions arising under federal statutes enacted after December 1, 1990.  Although both the ADA and Rehabilitation Act became law prior to December 1, 1990, both were amended by the ADA Amendments Act of 2008 ("ADAAA"), effective in 2009.  *See Toma v. Univ. of Haw.*, 304 F. Supp. 3d 956, 960–61 (D. Haw. 2018).  And to determine the statute of limitations, courts must consider whether a claim was "made possible" by the ADAAA.  *Id.* at 961 (citing *Jones v. R.R. Donnelley & Sons Co*., 541 U.S. 369, 382 (2004)).  Here, there is nothing to suggest that Plaintiff's claims were "made possible" by the ADAAA, which primarily revised the definition of "disability" for both the ADA and the Rehabilitation Act.  *See Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1223 (9th Cir. 2022) (stating that the ADAAA was enacted for the "express purpose" of rejecting a narrow reading of "substantially limits" by several Supreme Court decisions).

[17]  HRS § 657-7 states that "[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued."

[18]  The closest analog in Hawaii law to Title III of the ADA is found in HRS Chapter 489. Section 489-7.5 provides for a private cause of action for a violation of § 489-3, which makes it an unfair discriminatory practice to deny or attempt to deny a person the full and equal enjoyment of a place of public accommodation based on, among other things, a disability.

(continued . . . )

23

*Castelino v. Rose-Hulman Inst. of Tech*., 999 F.3d 1031, 1037 (7th Cir. 2021)

(stating "we apply Indiana's two-year statute of limitations for personal injury

claims" to a claim under Title III of the ADA); *Est. of Stern v. Tuscan Retreat, Inc*.,

725 F. App'x 518, 526 (9th Cir. 2018) (stating that although the Ninth Circuit has

not decided the limitations period for Title III claims, "the only conceivable options

are California's two-year personal injury provision and its three-year period for

'[a]n action upon a liability created by statute'"); *Gastelum*, 2024 WL 389229, at

*3; *Hartline v. Nat'l Univ.*, 2015 WL 4716491, at *5 (E.D. Cal. Aug. 7, 2015)

("[Title III] claims are subject to a two-year statute of limitations by analogy to the

Unruh Act and/or to the California personal injury statute."), *report and

recommendation adopted*, 2016 WL 426643 (E.D. Cal. Feb. 4, 2016); *McCasland v.

Herzog*, 2016 WL 3256954, at *2 (S.D. Cal. June 13, 2016); *see also Pele Def.

Fund v. Paty*, 73 Haw. 578, 595, 837 P.2d 1247, 1259 (Haw. 1992) (determining

that § 657-7's two-year statute of limitations applies to civil rights claims brought

under 42 U.S.C. § 1983).

   In short, the court applies HRS § 657-7's two-year statute of

limitations to Greer's ADA Title III claim.

---

But the limitations period for claims brought under § 493-3 is controlled by an administrative
exhaustion requirement pursuant to HRS § 368-11(c).  This state-law exhaustion requirement
cannot be imposed on a violation of the ADA, and as a result the court determines that the statute
of limitations for a § 493-3 violation is not an "analogous" state law.  Instead, HRS § 657-7
provides the most analogous state law.

b.    *Section 504 of the Rehabilitation Act*

Like the ADA, the statute of limitations for the Rehabilitation Act is governed by the most analogous state law statute of limitations.  *See Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 869 (9th Cir. 2014) ("The statute of limitations for claims under Section 504 of the Rehabilitation Act is provided by analogous state law."); *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 823 n.11 (9th Cir.), *amended*, 271 F.3d 910 (9th Cir. 2001) (same).  In Hawaii, similar to the ADA claims discussed above, the two-year personal injury statute of limitations is most analogous to a § 504 action.  *See Chun v. City & County of Honolulu*, 2020 WL 3965943, at *2 (D. Haw. July 13, 2020) (finding that Hawaii's two-year statute of limitations under HRS § 657-7 applies to claims under § 504 of the Rehabilitation Act), *aff'd*, 2022 WL 501586 (9th Cir. Feb. 18, 2022); *Toma*, 2017 WL 4782629, at *5 (same); *Jefferies v. Albert*, 2009 WL 4064799, at *5 (D. Haw. Nov. 24, 2009) (same); *Wiles v. Dep't of Educ. Haw.*, 2006 WL 8436133, at *15 n.7 (D. Haw. Dec. 19, 2006) (same).

c.    *Section 1557 of the ACA*

The ACA does not specify any statute of limitations.  And because the ACA was enacted after December 1, 1990, the four-year statute of limitations contained in 28 U.S.C. § 1658 applies.  *See C.P. by & through Pritchard v. Blue*

*Cross Blue Shield of Ill.*, 2022 WL 16835839, at *3 (W.D. Wash. Nov. 9, 2022);

*Palacios v. MedStar Health, Inc*., 298 F. Supp. 3d 87, 91 (D.D.C. 2018).[19]

> d.      Fraudulent concealment

A federal court also "borrows the state's equitable tolling rules" when

an analogous state law statute of limitation applies, "absent a reason not to do so."

*See Daviton v. Columbia/HCA Healthcare Corp*., 241 F.3d 1131, 1135 (9th Cir.

2001); *see also Ahmed v. Regents of Univ. of Cal*., 2018 WL 3969699, at *7–8

(S.D. Cal. Aug. 20, 2018) (applying California state equitable tolling rules to a

claim under the Rehabilitation Act).  Thus, Hawaii's doctrine of equitable tolling

applies to the ADA claim and the Rehabilitation Act claim.

In turn, Hawaii has adopted federal equitable tolling principles:

> In order to toll a statute of limitations for a complaint filed
> after its expiration, a plaintiff must demonstrate "(1) that
> he . . . has been pursuing his right diligently, and (2) that
> some extraordinary circumstance stood in his way."
> Extraordinary circumstances are circumstances that are
> beyond the control of the complainant and make it

---

[19]  Courts have considered and rejected the argument that because Section 1557 of the ACA incorporates the Rehabilitation Act's prohibited grounds for discrimination (disability) and enforcement mechanisms, the Rehabilitation Act's statute of limitations (which courts borrow from state law, as explained above) should apply instead of Congress's four-year "catch-all" in 28 U.S.C. § 1658.  *See Tomei v. Parkwest Med. Ctr.*, 24 F.4th 508, 514–15 (6th Cir. 2022) (holding that the ACA adopts the Rehabilitation Act's rights and remedies, but not its statute of limitations); *Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 64 (2d Cir. 2021) (reasoning that a plaintiff bringing a claim under the ACA presents a different case than a plaintiff alleging the same harm under the Rehabilitation Act, and the ACA claim is therefore subject to the four-year statute in limitations in § 1658); *Palacios v. MedStar Health, Inc.*, 298 F. Supp. 3d 87, 91 (D.D.C. 2018) (holding that claims arising under the ACA are subject to the four-year statute of limitations in 28 U.S.C. § 1658).

> impossible to file a complaint within the statute of
> limitations.

*Office of Hawaiian Affairs v. State*, 110 Haw. 338, 360, 133 P.3d 767, 789 (2006)

(internal citations omitted); *see also Reyes v. HSBC Bank USA, Nat'l Ass'n*, 135

Haw. 407, 2015 WL 3476371, at *6 (Haw. Ct. App. May 29, 2015) (applying

federal equitable tolling principles to fraudulent concealment); *Paco v. Myers*, 143

Haw. 330, 2018 WL 6177430, at *2 (Haw. Ct. App. Nov. 27, 2018); *Chun*, 2020

WL 3965943, at *3; *Spriestersbach v. Hawaii*, 622 F. Supp. 3d 948, 957 (D. Haw.

2022).  This test "is a very high bar, and is reserved for rare cases."  *Yow Ming Yeh*

*v. Martel*, 751 F.3d 1075, 1077 (9th Cir. 2014).

Further, HRS § 657-20—which applies to "any person who is liable"

under § 657-7—states that where the liable party

> fraudulently conceals the existence of the cause of action .
> . . from the knowledge of the person entitled to bring the
> action, the action may be commenced at any time within
> six years after the person who is entitled to bring the same
> discovers or should have discovered, the existence of the
> cause of action . . . , although the action would otherwise
> be barred by the period of limitations.

As used in HRS § 657-20, fraudulent concealment means the

"employment of artifice, planned to prevent inquiry or escape investigation, and

[mislead] or hinder acquirement of information disclosing a right of action."  *Au v.*

*Au*, 63 Haw. 210, 215, 626 P.2d 173, 178 (1981) (quotation and citation signals

omitted); *see also Imamoto*, 2008 WL 4657811, at *6–7; *Gast v. Kwak*, 396 F.

27

Supp. 2d 1150, 1157 (D. Haw. 2005) (applying HRS § 657-20); *Nakamoto v. Hartley*, 758 F. Supp. 1357, 1364–65 (D. Haw. 1991) (citing *Au* and applying HRS § 657-20).  Fraudulent concealment "involves the actions taken by a liable party to conceal a known cause of action," *Au*, 63 Haw. at 215, 626 P.2d at 178, and requires that a plaintiff show that a defendant acted affirmatively and fraudulently to conceal the cause of action.  *See id.*; *Gast*, 396 F. Supp. at 1157.  Further, fraudulent concealment concerns the concealment of a cause of action, not the concealment of facts in support of it:

> It is not necessary that a party should know the details of the evidence by which to establish his cause of action.  It is enough that he knows that a cause of action exists in his favor, and when he has this knowledge, it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim.

*Au*, 63 Haw. at 216, 626 P.2d at 178 (quoting *Weast v. Duffie*, 272 Mich. 534, 539 (1935)).

The federal doctrine of fraudulent concealment operates similarly, but it "tolls" the statute of limitations until the plaintiff discovers the cause of action, rather than extending the statute of limitations to six years.  *See E.W. French & Sons, Inc. v. Gen. Portland Inc.*, 885 F.2d 1392, 1399 (9th Cir. 1989) ("Under the equitable doctrine of fraudulent concealment, the applicable statute of limitations is tolled if the plaintiff proves the defendant fraudulently concealed the existence of the cause of action so that the plaintiff, acting as a reasonable person, did not know

28

of its existence.") (citation and quotation marks omitted).  A plaintiff must prove

that the defendant "affirmatively misled" him as to the operative facts that gave rise

to his claim, and that he had neither actual nor constructive knowledge of these

operative facts despite diligence in trying to uncover them.  *Thorman v. Am.*

*Seafoods Co.,* 421 F.3d 1090, 1094 & n.3 (9th Cir. 2005).

 **2.**    ***Analysis***

 Greer was diagnosed with a varicocele on November 27, 2018.  ECF

No. 1 at PageID.82 (¶ 442).  Specifically, as alleged in his Complaint, "Dr Greer

first discovered the fraud on 11/27/2018 when HPH Dr Fitzgerald informed

Dr Greer that his Testicular Disability was due to a varicocele and Not Polio during

a physical testicular examination."  *Id.*  Greer's own Complaint thus makes clear

that his cause of action based on the misdiagnosis of a varicocele accrued on

November 27, 2018.

 But Greer filed this action on July 16, 2024—five years and eight

months after his cause of action accrued.  Thus, even under the four-year statute of

limitations for the ACA claim—much less the two-year statute of limitations for his

ADA and Rehabilitation Act claims—Greer's federal claims are time-barred.

 Greer argues that his claims are not time-barred based on the doctrine

of fraudulent concealment.  ECF No. 1 at PageID.81–84 (¶¶ 441–456).  Greer's

ADA and Rehabilitation Act claims are governed by the Hawaii state law doctrine

of fraudulent concealment.  *Rave v. L'Oreal USA, Inc.*, 835 F. App'x 310, 310 n.1 (9th Cir. 2021) ("When a federal court applies a state statute of limitations it also applies that state's rules of tolling and estoppel.").  But Greer's ACA claim is governed by the federal doctrine of fraudulent concealment because its statute of limitations is laid out in 28 U.S.C. § 1658, not borrowed from state law.  *Cf. Rohr v. Crime Victims Comp. Comm'n*, 2019 WL 6718664, at *4 (D. Haw. Dec. 10, 2019), (applying federal fraudulent concealment principles to an ADAAA claim subject to the four-year statute of limitations in 28 U.S.C. § 1658), *aff'd,* 2022 WL 500928 (9th Cir. Feb. 18, 2022).

First, fraudulent concealment cannot save Greer's ACA claim because federal fraudulent concealment doctrine merely tolls the statute of limitations until the plaintiff discovers the cause of action.  Greer admitted he discovered the varicocele diagnosis on November 27, 2018.  Thus, Greer's four-year statute of limitations under the ACA expired on November 27, 2022, and his action is time-barred.

Greer's other claims fare no better under HRS § 657-20.  In response to the various motions raising a statute-of-limitations defense, Greer provides no evidence or even plausible allegations of fraudulent concealment.  Instead, Greer claims that seven different physicians he saw in the 2003–2018 period, prior to the November 27, 2018 diagnosis, all knew he had one or more varicoceles and

concealed that diagnosis from him.  As explained above, a conspiracy among these seven physicians is not plausible.  A failure to diagnose might conceivably form the basis for a cause of action in tort for medical negligence, but not for fraudulent concealment.  Under state or federal law, fraudulent concealment requires the liable party have actual *knowledge* of the cause of action—which Greer's allegations do not establish.  *Au*, 63 Haw. at 215, 626 P.2d at 178.

Greer's Complaint also includes descriptions of conduct that occurred after the November 27, 2018 diagnosis that seem to be intended to support Greer's claims of fraudulent concealment.  This conduct includes multiple physicians omitting details of his testicular disability from his medical records after November 27, 2018, *see* ECF No. 1 at PageID.24 (¶¶ 107, 110), PageID.25 (¶¶ 113, 114), and Dr. Fitzgerald prescribing him tamsulosin on January 23, 2019, *id.* at PageID.33 (¶ 157).  But because these events occurred after Greer found out about his varicocele (and thus found out about his cause of action), they do not support his claim of fraudulent concealment.  *Au,* 63 Haw. at 216, 626 P.2d at 178 ("If there is a known cause of action there can be no fraudulent concealment . . . . [i]t is not necessary that a party should know the details of the evidence by which to establish his cause of action.") (citation omitted).

Thus, Greer has not provided a sufficient basis to apply the six-year statute of limitations in HRS § 657-20 for fraudulent concealment to his ADA and

Rehabilitation Act claims, and the federal fraudulent concealment doctrine does not save his ACA claim. Nor has Greer provided any basis to support a claim of equitable tolling under federal or state law. All of Greer's federal claims are therefore time-barred. Greer had an opportunity to allege additional facts or make additional arguments to support his fraudulent concealment theory in his Responses, but none of his additional allegations make the theory plausible. *See generally* ECF No. 37 at PageID.687–693; ECF No. 38 at PageID.726–730; ECF No. 39 at PageID.767–773. Giving Greer the opportunity to amend his Complaint would therefore be futile. These claims are DISMISSED with prejudice.

**D.    The Court Declines to Exercise Supplemental Jurisdiction over Greer's HRS Chapter 489 Claim**

Having dismissed the federal claims, the only remaining claim is a state law claim over which the court has only supplemental jurisdiction (there is no basis in the Complaint for diversity jurisdiction). *See* 28 U.S.C. § 1367(c)(3). And under § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction [over state law claims] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) ("[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343,

350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citation and internal quotation marks omitted). Here, exercising its discretion, the court declines to exercise supplemental jurisdiction over the remaining state law claim under HRS § 489-1 et seq. and DISMISSES the claim without prejudice. And to the extent Greer's Complaint alleges or intended to allege any claims sounding in medical malpractice, those state-law claims are likewise DISMISSED without prejudice.

## V.  <u>CONCLUSION</u>

For the reasons set forth above, the court GRANTS Defendants' Motions, ECF Nos. 18, 22, 25, and 30, and DISMISSES Greer's Complaint against all Defendants without leave to amend. The Clerk shall close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 31, 2025.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

33